UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERNEST NEAL,

       Plaintiff,

v.                                   Case No. 2:07-cv-249
                                        HON. R. ALLAN EDGAR

KATHY KAFCZYNSKI,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Ernest Neal, an inmate currently confined at the Ojibway Correctional Facility (OCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Librarian Kathy Kafczynski. Plaintiff's complaint alleges that he was transferred from Camp Kitwen to OCF for the sole purpose of using the law library in order to prepare a petition for writ of habeas corpus to be filed in the federal court. Plaintiff requested that he be permitted access to the law library for the standard six hours per week, with an additional four hours as is provided for in Michigan Department of Corrections' policy directive 05.03.115. Plaintiff showed Librarian Lee the documents that are necessary to be granted additional time in the law library under the policy, and Librarian Lee granted Plaintiff's request for an additional four hours per week in the law library. During the classification procedure at OCF, Plaintiff explained his situation to the classification director, and the director stated on Plaintiff's classification papers that Plaintiff would not be placed in the job pool because of his time in the law library.

In July 2007, Librarian Lee went on administrative leave. In August 2007, Defendant Kafczynski canceled Plaintiff's additional four hours in the law library. Plaintiff made several

requests to Defendant Kafcynski to be granted the additional hours in the law library, and showed

her the same documents that he had shown to Librarian Lee.  Defenant Kafczynski refused each of

Plaintiff's requests.  Because Plaintiff was not able to complete his petition by the deadline of

October 27, 2007, he was unable to file a petition for writ of habeas corpus in this court.  Plaintiff

claims that Defendant's actions violated his rights under the First and Fourteenth Amendments and

is seeking compensatory and punitive damages, as well as injunctive relief.[1]

    Presently before the Court is Defendant's Motion for Summary Judgment, pursuant

to Fed. R. Civ. P. 56.  (Docket #11.)  Plaintiff has filed a response and the matter is ready for

decision.  Summary judgment is appropriate only if the moving party establishes that there is no

genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the

burden of showing there is an absence of evidence to support a claim or defense, then the party

opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The

nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is

a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed

in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment

motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing*

*Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in

---

[1]Plaintiff has filed a motion to file a supplemental complaint (docket #24), as well as a proposed supplemental complaint.  Plaintiff's motion is granted.  The undersigned has considered the allegations in the proposed supplemental complaint in the instant report and recommendation.

support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In her motion for summary judgment, Defendant claims that Plaintiff's complaint should be dismissed because Plaintiff did not suffer any injury, so that there is no case or controversy to be decided. As noted above, Plaintiff claims that Defendant's actions taken in August of 2007 resulted in his inability to file a timely habeas corpus petition on October 27, 2007. Defendant states that because Plaintiff's state court criminal conviction became final on October 31, 2005, the statute of limitations for filing a habeas corpus petition expired on October 31, 2006. Therefore, Defendant asserts that her actions did not deprive Plaintiff of his right to file a habeas corpus petition. In support of this assertion, Defendant offers a copy of the Michigan Supreme Court order in *People v. Neal*, No. 128631 (Oct. 31, 2005), showing that Plaintiff's appeal was denied on October 31, 2005. (*See* Defendant's Exhibit B.)

As noted by Defendant, the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C.  § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 121 S. Ct. 2120 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").

Defendant is correct that Plaintiff's direct appeal to the Michigan Supreme Court was denied on October 31, 2005.  However, despite the fact that Plaintiff did not petition for certiorari to the United States Supreme Court, the one-year limitations period did not begin to run until the ninety-day period in which Plaintiff could have sought review in the United States Supreme Court had expired.  *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  The ninety-day period expired on January 31, 2006.  Therefore, the statute of limitations would not have begun to run until January 31, 2006.

In addition, Defendant fails to note that at some point during 2006, Plaintiff filed a motion for relief from judgment, which tolled the running of the statute of limitations.  Plaintiff appealed the denial of his motion for relief from judgment to the Michigan Court of Appeals, which denied Plaintiff leave to appeal on September 28, 2006.  *See Michigan v. Neal*, Michigan Court of Appeals No. 268853, docket # 26.  It does not appear that Plaintiff filed an application for leave to

- 4 -

appeal to the Michigan Supreme Court. Under Michigan law, a delayed application for leave to appeal to the Michigan Supreme Court may not be filed more than 56 days after the Court of Appeals decision. MICH. CT. R. 7.302(C)(2). The 56-day period expired on November 23, 2006, at which point the statute of limitations resumed running. It is not clear how much time elapsed between the time that the statute of limitations began to run and the time that Plaintiff tolled the running of such by filing his motion for relief from judgment. Therefore, there appears to be genuine issue of material fact regarding whether Defendant's conduct in August of 2007 affected Plaintiff's ability to file a timely habeas corpus petition.

Citing 42 U.S.C. §1997e(e), Defendant contends that Plaintiff cannot claim damages for emotional harm, because he has not shown any attendant physical injury. Section § 1997e(e) provides as follows:

> No federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

In *Swackhammer v. Goodspeed*, 2009 WL 189854, slip op. (W.D. Mich. Jan. 26, 2009) (Bell), the court noted that the majority of circuit courts that have considered the issue hold that the limitation on damages set forth in § 1997e(e) applies to all federal prisoner lawsuits, including First Amendment claims. *Id.* at slip op. *1 (*citing Taylor v. United States*, 161 F. App'x 483, 487 (6th Cir.2005) (unpublished); *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir.2005); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir.2004); *Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir.2002); *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir.2001); *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir.2000); *Cassidy v. Indiana Dep't of Corr.*, 199 F.3d 374, 376 (7th Cir.2000). The court further noted that "the Ninth Circuit stands alone in holding that § 1997e(e) does not apply to First amendment claims. *Swackhammer v. Goodspeed*, slip op. at *2 (*citing Canell v. Lightner*, 143 F.3d

1210, 1213 (9th Cir.1998)). The court further stated that because the plaintiff in *Canell v. Lightner* did not assert a claim for "mental or emotional injury," his claims did not implicate § 1997e(e). Therefore, the Ninth Circuit's determination that § 1997e(e) does not apply to First Amendment claims appears to be dictum. *Id.* at *2.

As noted in *Swackhammer*, a prisoner need not demonstrate physical injury to establish a First Amendment claim. *Id.* at *2. A prisoner is entitled to judicial relief for a violation of his First Amendment rights without regard to any physical, mental, or emotional injury he may have suffered. *Id.* The majority of circuits that have considered the issue have concluded that § 1997e(e) does not bar claims for nominal damages, punitive damages, injunctive relief, or declaratory relief. *Id.* The court in *Swackhammer* concluded that § 1997e(e) applies to a prisoner's First Amendment claims, and that it barred the plaintiff's claim for mental and emotional damages if he could not show a physical injury. However, the court also concluded that § 1997e(e) does not bar a prisoner from recovering nominal and punitive damages for First Amendment violations, even in the absence of physical injury. *Id.* at *3.

In the instant case, the undersigned notes that Plaintiff is seeking compensatory and punitive damages, as well as injunctive relief. Applying the holding in *Swackhammer* to the instant case, the undersigned recommends that to the extent that Plaintiff is seeking damages for emotional anguish, his claims are barred by § 1997e(e). However, the undersigned notes that Plaintiff's remaining claims are not barred by § 1997e(e).

Defendant claims that she is entitled to summary judgment on his First Amendment claim because Plaintiff has failed to show a need for the additional law library time. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right

- 6 -

of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

In Defendant's affidavit, she attests that Plaintiff was given the opportunity to meet with her and her supervisor to show adequate proof of the need for additional law library time, but that Plaintiff refused. (Defendant's affidavit, Exhibit A, ¶ 9.) In addition, Defendant attaches a copy of the step I grievance and response for No. OCF 07-08-009-44149, which is dated August 12, 2007. In that grievance, Plaintiff asserts that he was denied full-time law library status. In the response to the grievance, Jim Young states:

> Prisoner Neal #215433 is on a continuous law library call out for Wednesday, Thursday and Friday from 1030-1230 as allowed per PD 05.03.115. Prisoner wants more law library time and has been instructed to show documented proof of a deadline to receive additional time. Prisoner was called out on 9/11/07 to go over any documentation to show the need for more law library time, prisoner had told unit staff that he wasn't going, and then said he would go and then told staff to tear up the pass that he wasn't going over to the

Library.  Since the prisoner did not want to address this, grievance is
denied.

(Defendant's Exhibit A-4, p. 1.)

In addition, the step II response to Plaintiff's grievance, signed by Acting Warden Dan
Quigley, noted that Plaintiff was on a continuous law library callout which allowed him the
mandated six hours of law library time, but that when Plaintiff was contacted to discuss the
grievance, he refused to meet with Quigley.  The response also states:

Grievant is indeed on callout for the allotted 6 hours of law library
time and has provided no documentation noting a court deadline
which would necessitate additional law library time.  Grievant has
failed to provide further documentation to support his claim that he
is being denied constitutional rights.

(Defendant's Exhibit A-4, p. 2.)

Furthermore, the step III response to the grievance states:

PD 05.03.115 does not require that prisoners who transfer to a Level
I facility from a camp be assigned to the law library "full-time."  OCF
staff have indicated that the grievant failed to provide sufficient
documentation to support the need for law library time beyond the six
hours per week required by PD 05.03.115.  The grievant has provided
no documentation at Step Three to support the need for any additional
time.  No violation of policy has been shown.

(Defendant's Exhibit A-4, p. 3.)

Finally, Defendant offers a copy of the Offender Callout Management System
Offender Work Schedule History Report for Plaintiff for November 29, 2006, through July 4, 2008.
(Defendant's Exhibit A-1.)  According to this report, Plaintiff was scheduled for the law library on
15 different occasions, but did not attend law library on any of these occasions.  (Defendant's Exhibit
A-1, pp. 7-8.)

In his brief, Plaintiff states that he met with Librarian Lee in February of 2007 and demonstrated his need for additional law library time at that point.  Plaintiff states that he attended law library callouts from February 6, 2007, until May 31, 2007.  However, a review of the Work Schedule History Report reveals that Plaintiff did not attend law library during his scheduled times at any point between February 6, 2007, and May 31, 2007.  (Defendant's Exhibit A-1, pp. 3-6.)

The undersigned notes that the right of access to the courts has never been equated with the access of legal materials at the prison library.  *Walker*, 771 F.2d at 932; *see also Lewis*, 518 U.S. at 351 (a sub-par library or legal assistance program does not establish relevant actual injury).  Plaintiff claims that he was unable to file a timely appeal of his motion for relief from judgment or a timely habeas corpus action because he was not given sufficient time in the law library.  However, the record shows that Plaintiff did not take advantage of the time he was allowed to attend law library.  Therefore, it does not appear that Defendant's conduct caused Plaintiff to suffer an actual injury to his ability to file a timely habeas corpus action.  The undersigned therefore recommends that Defendant be granted summary judgment on this claim.

Defendant claims that she is entitled to summary judgment on Plaintiff's Fourteenth Amendment equal protection claim.  However, it does not appear that Plaintiff is asserting such a claim.  Rather, it appears that Plaintiff is claiming that his Fourteenth Amendment due process rights were violated by Defendant's asserted violation of MDOC policy.  However, this claim lacks merit.  Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  Plaintiff does not enjoy any federally protected liberty or property interest in state procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

- 9 -

Finally, Defendant claims that she is entitled to qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

- 10 -

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding."  *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

- 11 -

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429.  If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429.  These are both purely legal questions.  The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).  In this case, Plaintiff has failed to support his claim that Defendant's conduct violated his constitutional rights.  Therefore, the undersigned recommends that Defendant be granted qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment.  Accordingly, it is

- 12 -

recommended that Defendant's Motion for Summary Judgment (Docket #11) be granted and this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 12, 2009

- 13 -